# Chesapeake & Ohio Ry. Co. v. Welch.

(Decided March 26, 1937.)

LEWRIGHT BROWNING and KIRK & WELLS for appellant.

J. L. HARRINGTON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The appeal is from a $1,000 judgment for false imprisonment.

Our Criminal Code defines the circumstances under which a person may be deprived of his liberty. An arrest may be made by a peace officer or by a private person. Section 35, Criminal Code of Practice. A peace officer may make an arrest (1) in obedience to a warrant of arrest delivered to him; (2) without a warrant, when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony. Section 36, Criminal Code of Practice, subsections 1 and 2. Welch appears to have been arrested without a warrant, and

the railway company defended on the ground that the officers making the arrest had reasonable grounds to believe that he had committed a felony. The company's chief insistence is that the defense was sustained as a matter of law, and that it was entitled to a peremptory instruction at the conclusion of the evidence. The contention requires a brief statement and review of the evidence.

According to Welch, he lived at White House, in Johnson county. On November 22, 1933, he saw H. I. Williams and Marlin Marcum at White House. They were both railroad detectives. They told him that they wanted him to go with them to Prestonsburg to identify Elmer Webb and Shady Dutton. At the same time they told him that he could come back on the train, or they would bring him back in a car. They told him at Paintsville that they had a warrant for him. They never took him before the county judge or any magistrate in Johnson county. On their arrival at Prestonsburg they took him to the jail office. They kept him in the office about ten minutes. Williams then told the jailer to lock him up. He stayed in the jail from November 22d to November 24th. Some man in the jailer's office asked him if that boy had any reason for telling that he was with them when they robbed the train, and he told them that he did not. He asked witness if he had anything to do with it and he said he did not. On cross-examination he stated that he got in the car and went along willingly to Prestonsburg, and was not under arrest. Though Williams said at Paintsville that he had a warrant for him, he did not show the warrant. When he got to the jailer's office, Williams, Marcum, Elmer Webb, and Shady Dutton were there. A warrant was served on him after he was in jail. While there, Williams asked Elmer Webb if the witness was with him, and Elmer said, "Yes." He then asked Shady Dutton and Shady said, "No." He made no objection to going along with the man. While there, he was asked by the officer to sign a statement and he did. They promised that they would release him and the case would be thrown out of court. Shady Dutton saw Williams and Marcum before they went to White House. They asked him who was with him at the time he and Elmer Webb broke into the cars. He told them, "No one." After that they had him all tangled up and he told them that there was a Wells boy. He told them that Charley

Welch was not with them. On cross-examination he stated that just he and Elmer Webb were the ones who broke into the car. Elmer Webb broke into the two cars, and witness took the nails out and seals off. Elmer Webb was arrested before he was. He was arrested at J. B. Cabin. He was convicted and sentenced to the penitentiary. He told them that General Wells was the other boy, but they had him scared. Raymond Van Hoose testified that on the night of the robbery Charley Welch was at home. George Cavings saw Elmer Webb and Shady Dutton the evening before the robbery at White House, and Charley Welch was not with them. He saw Webb and Dutton get on the train going down, and afterward saw Charley Welch on the platform. John Parsons testified to the same effect.

On the other hand, the evidence for appellant is as follows: On the night of November 19, 1933, special agents M. L. Marcum and W. D. Kise, both duly appointed and qualified railway policemen under the provisions of section 779a-1 et seq., Kentucky Statutes, were directed to ride manifest freight train No. 94 out of Ashland. After boarding the train, the officers found the seals on two cars broken, and stationed themselves at convenient places to arrest the offenders. On the arrival of the train at Louisa, it stopped on a siding. The officers started back over the train. When they reached the cars on which the seals had been broken, they saw three men, two on the ground and one coming out of the door of one of the cars. Marcum arrested two of the men, Elmer Webb and Shady Dutton, and took them on the train with him to Paintsville. Officer Kise started in pursuit of the third offender, but the latter escaped. Following the arrest of Webb, a representative of the Federal Bureau of Investigation by the name of Woods was called in, and he made an investigation at Prestonsburg. In the course of the investigation, Webb stated, and made affidavit to the effect, that Charley Welch was the third person engaged in the robbery of the train. Following the statement by Webb, special agents Marcum and Williams went to the home of Welch in Johnson county and asked him to return with them to Prestonsburg, and Welch agreed to go. On their arrival at Prestonsburg Webb again stated that Welch was one of the men engaged in the robbery of the train. Thereupon Welch was placed in jail at Prestonsburg, and some thirty or forty minutes later a warrant for his

arrest was issued by the United States Commissioner and served upon him by the Deputy United States Marshal. A mittimus was also issued by the United States Commissioner, and under it Welch was confined in jail until November 24th. Welch was released under bond on November 24th, and nothing further was done in the case. According to H. I. Williams, he went to see Webb at the jail in Prestonsburg. Webb stated that Welch was mixed up in the robbery, but Dutton denied it. Mr. Woods wanted to talk to Charley Welch, and asked the witness to go down to White House and bring him up. He and Marcum got in a car, drove down and met Charley Welch. They told him they wanted him to come to Prestonsburg to talk to Mr. Woods. At no time did they tell him he was under arrest. When they arrived at the jail, Fred Atkinson, United States Commissioner, sent word to the jailer to hold Welch, that he would send commitment papers. On being asked if Webb had not already made two affidavits with reference to car breaking, witness answered,

> "Well, I don't recollect, Mr. Harrington. He first said that General Wells was in it. When he first told us about it. Then we went down and got General Wells and brought him there, and then he said Charley Welch was in it, was mixed up in the breaking and entering the cars, but whether he made the affidavit the first time when General Wells was in there or not, I don't know. I haven't got the affidavits before me."

Also, Webb swore on the trial that Charley Welch was present and participated in the robbery.

The breaking and entering of railroad cars, and stealing a part of an interstate shipment is a felony both under the Federal Statute, section 409, title 18, U. S. Code Annotated, and section 1201b, Kentucky Statutes. The question is not whether Welch was actually guilty, but whether the officers had reasonable grounds to believe that he had participated in the robbery. If so, they were justified in making the arrest. In passing, it may be stated that the failure of the officers to carry plaintiff forthwith before the most convenient magistrate of the county in which he was arrested was not mentioned in the petition, or made a ground for recovery, and at the outset that feature of the case may be eliminated. Only in immaterial matters is there any

dispute in the evidence. At the time of the robbery a third man was seen coming out of the car. Before they left for Johnson county, Webb told the officers, and made affidavit to the effect, that Welch participated in the robbery. Upon the arrival of the officers with Welch at the jailer's office in Prestonsburg, Webb again assured the officers that Welch was guilty. It is true that Dutton denied this, but he too, like Webb, made two different statements. It is the duty of special agents, like those employed by the company, to investigate crimes against the company and apprehend the offenders. In the great majority of cases, immediate action is necessary, and the courts have never been inclined to adopt a rule so strict as to permit the guilty to escape. The case is free from personal bias, and there appears no motive on the part of the officers other than the purpose to arrest a person whom they believed to be guilty. It seems to us that when a person who actually participated in the crime, and knows who was present, not only swears beforehand that the plaintiff was guilty, but when confronted by the plaintiff adheres to his statement, though in the meantime he had made a different statement, the circumstances are such as to afford reasonable grounds for believing that the plaintiff had committed a felony. It follows that the company's motion for a peremptory instruction should have been sustained.

This conclusion makes it unnecessary to consider the other questions discussed in briefs.

Judgment reversed and caused remanded for a new trial consistent with this opinion.